**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOHN REINIER SABEY,

      Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

No. 14 CV 3301

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff John Reinier Sabey filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001).[1] A

---

[1] The regulations governing the determination of disability for SSI are found at 20 C.F.R. § 416.901 et seq. The standard for determining SSI DIB is virtually identical to that

person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

used for Disability Insurance Benefits (DIB). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI on August 5, 2011, alleging that he became disabled on March 1, 2010, because of depression and bipolar disorder. (R. at 60, 165). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 54–57, 60, 78–82, 88–98). On November 27, 2012, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 11–53, 60). The ALJ also heard testimony from Pamela J. Tucker, a vocational expert (VE). (*Id.* at 11–53, 60, 128–29).

The ALJ denied Plaintiff's request for benefits on December 26, 2012. (R. at 60–77). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since August 5, 2011, the application date. (*Id.* at 62). At step two, the ALJ found that Plaintiff's affective disorder variously diagnosed as depression or bipolar disorder, anxiety, and alcohol dependence are severe impairments. (*Id.*). At step three, the ALJ determined that Plaintiff's impairments, including the substance abuse disorder, meet listing 12.04. (*Id.* at 70). However, the ALJ found that if Plaintiff stopped the substance abuse, he does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations.[2] (*Id.* at 71–72).

---

[2] The Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). "When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and determined that if he stopped the substance abuse, he would be able to perform the full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] is limited to simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements; involving only simple work-related decisions; and with few if any workplace changes. In addition, [Plaintiff] can have no interaction with the public and only brief, superficial interaction with co-workers and supervisors.

(R. at 72). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that if Plaintiff stopped the substance abuse, he would be unable to perform any past relevant work. (*Id.* at 76). Based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined at step five that if Plaintiff stopped the substance abuse, there would be jobs that exist in significant numbers in the national economy that Plaintiff can perform, including transportation cleaner, cleaner, and machine feeder. (*Id.* at 76–77). Accordingly, the ALJ concluded that Plaintiff is not suffering from a disability, as defined by the Act. (*Id.* at 77).

The Appeals Council denied Plaintiff's request for review on March 10, 2014. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as

---

the applicant not a substance abuser, she would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006).

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

Plaintiff first experienced psychiatric symptoms when he was 10 years old. (R. at 262). He was sexually molested by an older relative from ages 6 to 8 and later psychically abused by the same relative from ages 10 to 13. (*Id.*). He was admitted to a psychiatric hospital for a week at age 15 because of depression symptoms. (*Id.*). He was sad and angry, and did not know what to do about it, so his parents referred him to the hospital. (*Id.*).

On March 16, 2011, Plaintiff reported terrible anxiety and up and down moods. (R. at 231). On examination, Sudhir M. Gokhale, M.D., observed a flat affect, down mood, and fair insight. (*Id.*). Dr. Gokhale concluded that Plaintiff's depression and anxiety were getting worse, diagnosed depression, anxiety and mood disorders, and prescribed Depakote and Xanax. (*Id.*).

On May 16, 2011, Plaintiff began treating with the Bobby E. Wright Compre-hensive Behavioral Health Center. (R. at 262). Plaintiff complained of sadness, overconfidence, racing thoughts, loss of interest in daily activities, insomnia, mood swings, anorexia, low self-esteem, and suicidal ideations. (*Id.*). Aftab Noorani, M.D., diagnosed bipolar I disorder, of moderate severity, most recent episode depressed, and generalized anxiety disorder, both of which were severely exacerbated by lack of income and family support, and assigned a Global Assessment of Functioning (GAF) score of 40.[4] (*Id.*). Dr. Noorani prescribed Tegretol, Prozac, and Xanax.[5] (*Id.* at 262, 274). Dr. Noorani saw Plaintiff on a monthly basis, adding Risperdal and Seroquel and changing dosages in an effort to control Plaintiff's symptoms, with lit-tle success. (*Id.* at 271; *see id.* at 264–70, 307, 313).

On June 20, 2011, Plaintiff complained of side effects which were diminishing his sexual drive. (R. at 270). Dr. Noorani changed medications. (*Id.*). On July 19, Plaintiff reported depression symptoms and acknowledged drinking beer socially. (*Id.* at 269). Dr. Noorani increased the Wellbutrin dosage. (*Id.*). On August 10,

---

[4] The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000) (hereinafter *DSM-IV*). A GAF score of 31–40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several are-as, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). *DSM-IV* at 34. The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013); *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012).

[5] Tegretol (carbamazepine) is an anticonvulsant, which is also used to treat bipolar dis-order. <www.drugs.com>

Plaintiff reported suicidal ideations, increased irritability, and difficulty with impulse control. (*Id.* at 267). Dr. Noorani noted that Plaintiff was mildly anxious, but without current suicidal ideations. (*Id.*). On August 23, Plaintiff reported depression symptoms and complained of irritability side effects. (*Id.* at 268). On September 2, Plaintiff reported that despite being compliant with his medications, he periodically feels overwhelmed trying to cope with social stressors. (*Id.* at 266). Dr. Noorani increased the Tegretol dosage to help control Plaintiff's anger and mood swings. (*Id.*). On November 19, Plaintiff was compliant with medications but only marginally functional. (*Id.* at 265). On January 6, 2012, Plaintiff reported doing "relatively well" on his current medications. (*Id.* at 264). On January 31, Plaintiff complained that he gets easily agitated and has frequent, angry outbursts. (*Id.* at 314).

On September 9, 2011, Henry Fine, M.D., reviewed the medical record and performed a psychiatric evaluation on behalf of the Commissioner. (R. at 237–40). Plaintiff reported sleep disorders, chronic and extreme mood changes, depressions lasting a month or longer, manic phases lasting a few days to a couple weeks, suicidal ideations, and a history of alcohol abuse, including occasional recent binges. (*Id.* at 237–38). During depressive periods, he has low energy and sleeps most of the time; the manic phases are characterized by lack of sleep for a day or two. (*Id.*). Dr. Fine found Plaintiff credible and concluded that Plaintiff "presents with a clear history of alternating suicidal depressions and manic states," which are not controlled by medications. (*Id.* at 237, 240). He diagnosed bipolar I disorder, last episode depressed, and alcohol abuse, still partially ongoing. (*Id.* at 240).

On September 30, 2011, S. Hill, Ph.D., a nonexamining, state-agency consultant, reviewed the record and completed a Psychiatric Review Technique form. (R. at 241–53). Dr. Hill concluded that Plaintiff meets the listings for an affective disorder (12.04) and a substance addiction disorder (12.09). (*Id.* at 241). He opined that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. (*Id.* at 251). On the same day, Dr. Hill also completed a mental RFC assessment. (*Id.* at 255–57). He concluded that Plaintiff is moderately limited in the ability to understand, remember and carry out detailed instructions, and to interact appropriately with the general public. (*Id.* at 255–56). Six months later, on March 15, 2012, Michael J. Schneider, Ph.D., another nonexamining, state-agency consultant, affirmed Dr. Hill's assessment. (*Id.* at 285–87).

On November 28, 2011, Olubunmi Durojaiye, M.P.H.,[6] Plaintiff's therapist at Wright Health Center, completed a mental RFC assessment. (R. at 259–60). She opined that Plaintiff is substantially impaired in his ability to remember locations and work-like procedures, understand, remember and carry out detailed instructions, maintain attention and concentration, sustain an ordinary routine without supervision, work in coordination with or proximity to others without being distracted, complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rests, accept instructions and respond appropriately to criticism from

---

[6] "The Master of Public Health (M.P.H.) . . . degree focuses on public health practice, as opposed to research or teaching."
<https://en.wikipedia.org/wiki/Professional_degrees_of_public_health#Masters_degrees>

supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to unexpected changes in the work setting and routine, and set realistic goals or make plans independently. (*Id.* at 259–60). Durojaiye stated that Plaintiff was not currently using drugs or alcohol. (*Id.* at 260). On May 15, 2012, Durojaiye completed another mental RFC assessment, which generally came to the same conclusions. (*Id.* at 305–06).

On February 14, 2012, Ana A. Gil, M.D., completed a psychiatric examination on behalf of the Commissioner. (R. at 280–84). She observed that Plaintiff has mild psychomotor retardation, with poor hygiene and a disheveled appearance. (*Id.*). Plaintiff reported that despite taking Tegretol and Xanax daily, he continues to feel "extremely depressed." (*Id.* at 280). He also described feelings of hopelessness, worthlessness, anhedonia, lack of motivation, and difficulty concentrating. (*Id.*). He also reported occasional manic episodes lasting up to two weeks. (*Id.*). Plaintiff acknowledged a past history of chronic alcohol dependence and abuse but has been in remission for a year. (*Id.* at 281). On examination, Plaintiff's affect was sad and restricted and his mood moderately depressed. (*Id.* at 282). Dr. Gil concluded that Plaintiff's history, symptoms and signs are indicative of a bipolar disorder recurrent without psychotic features, depressed, moderate to severe; history of chronic alcohol dependence and abuse; antisocial personality traits; and childhood conduct disorder. (*Id.* at 283–84). She opined that Plaintiff would be unable to manage funds himself if he was awarded benefits. (*Id.* at 284).

In March and April 2012, Plaintiff reported stable symptoms. (R. at 312–13). On May 11, 2012, he acknowledged drinking five beers over the weekend. (*Id.* at 311). On June 11, Plaintiff complained of angry outbursts and unstable mood because of psychosocial stressors. (*Id.* at 310). He acknowledged drinking a six-pack of beer while attending a blues festival, but noted that he drank a lot more in the past. (*Id.*). Dr. Noorani admonished Plaintiff to avoid drinking. (*Id.*). On August 7, Plaintiff reported that his medications were lessening his angry outbursts. (*Id.* at 309). On September 7, he reported being compliant with his medications and denied drinking. (*Id.* at 308). Dr. Noorani opined that Plaintiff was stable, diagnosing bipolar disorder and anxiety disorder, and continuing his medications. (*Id.*). On November 9, however, Plaintiff complained of episodes of both depression and mania. (*Id.* at 307). He acknowledged being unable to manage his medications without his girlfriend's assistance, which caused Dr. Noorani to lower his estimate of Plaintiff's functionality. (*Id.*). Dr. Noorani added Seroquel to combat Plaintiff's mood swings and discontinued Elavil. (*Id.*).

On November 16, 2012, Dr. Noorani completed a mental RFC assessment. (R. at 316–17). He opined that Plaintiff is substantially impaired in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration, work in coordination with or proximity to others without being distracted, complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rests, accept instructions and respond appropriately to criticism from su-

pervisors, respond appropriately to unexpected changes in the work setting and routine, set realistic goals or make plans independently, and be aware of normal hazards and take necessary precautions. (*Id.*). He stated that Plaintiff was not currently using drugs or alcohol. (*Id.* at 317).

In a January 30, 2013 letter,[7] Dr. Noorani acknowledged that Plaintiff has admitted to occasional drinking and a past history of abuse. (R. at 318). Dr. Noorani has counseled Plaintiff to stop drinking, and Dr. Noorani believes that he has done so. (*Id.*). Dr. Noorani reiterated that he "never saw any signs of [Plaintiff] being under the influence of alcohol." (*Id.*). He opined that Plaintiff's bipolar disorder causes all the limitations noted in his November 2012 assessment. (*Id.*). Dr. Noorani concluded that Plaintiff is "functionally disabled because of his residual bipolar disorder." (*Id.*).

## V. DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because (1) the ALJ improperly weighed the opinion evidence, and (2) Plaintiff's substance abuse was not a contributing factor to the determination of disability. (Dkt. 13 at 1–2).

## A. ALJ Did Not Properly Evaluate the Treating Sources' Opinions

Plaintiff asserts that the ALJ improperly evaluated the opinions of Dr. Noorani and MHP Durojaiye. (Dkt. 13 at 12–15). Plaintiff argues that the ALJ "did not pro-

---

[7] While this letter was received after the ALJ issued his decision, the Appeals Council accepted it into the medical record. (R. at 5).

vide legitimate reasons for rejecting [the] opinions of [Plaintiff's] treating sources, and he failed to consider the factors set forth in the rulings and regulations." (*Id.* at 15).

### 1. Dr. Noorani

Plaintiff began treating with Dr. Noorani in May 2011. (R. at 262). In November 2012, after seeing Plaintiff on a monthly basis, Dr. Noorani completed a mental RFC assessment. (*Id.* at 316–17). He opined that Plaintiff is substantially impaired in his ability to perform many work-related functions. (*Id.*). The ALJ afforded Dr. Noorani's opinion "minimal weight" because

> it is without explanation as well as inconsistent with [Plaintiff's] abilities as suggested from the consultative examinations and Dr. Noorani's own treatment notes. In addition, the opinion does not even consider [Plaintiff's] admitted alcohol use. In fact, contrary to Dr. Noorani's own treatment notes, Dr. Noorani reported in the opinion that [Plaintiff] is not currently using drugs or alcohol.

(*Id.* at 75) (citations omitted).

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *accord Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F.

Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)) (other citation omitted).

Under the circumstances, the ALJ's decision to give minimal weight to Dr. Noorani's opinion is legally insufficient and not supported by substantial evidence. First, Dr. Noorani's opinion is consistent with his treatment notes. Based on Plaintiff's symptoms and his own observations, Dr. Noorani consistently diagnosed Plaintiff with a bipolar disorder and an anxiety disorder, both of which were exacerbated by psychosocial factors. (R. at 262–79, 307–15). He initially prescribed Tegretol, Prozac, and Xanax, later adding Risperdal and Seroquel, in an effort to control Plaintiff's symptoms, with little success. (*Id.*). On multiple occasions, Plaintiff reported suicidal ideations, uncontrolled anger, irritability, and difficulty with impulse control. (*Id.* at 262, 266–68, 310, 314). While Dr. Noorani initially found that Plaintiff was marginally functional (*id.* at 265), he later lowered his estimate when learning that Plaintiff was unable to stay compliant with his medications without his girlfriend's assistance (*id.* at 307).

The very nature of Plaintiff's mental illness is that he has good days and bad days. Plaintiff has a bipolar I disorder, which involves widely fluctuating symptoms. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 382–91 (4th ed. Text Rev. 2000) (hereinafter *DSM-IV*). A bipolar I disorder is characterized by both major depressive episodes, which symptoms "cause clinically significant distress or impairment in social, occupational, or other important areas of functioning," and manic episodes, which symptoms include a "distinct period of abnormally and persistently elevated, expansive, or irritable mood, lasting at least 1 week, . . . [that ] is sufficiently severe to cause marked impairment in occupational functioning or in usual social activities or relationships with others . . . ." *Id.* at 356, 362, 391. Plaintiff also has a generalized anxiety disorder (GAD), which is "characterized by excessive, uncontrollable and often irrational worry . . . [that] often interferes with daily functioning, as individuals with GAD typically anticipate disaster, and are overly concerned about everyday matters such as health issues, money, death, family problems, friendship problems, interpersonal relationship problems, or work difficulties."[8] These signs, symptoms, and diagnoses are consistent with Dr. Noorani's opinion that Plaintiff is significantly limited in his ability to perform work-related functions.

Second, Dr. Noorani's opinion is not inconsistent with the consultative examinations. In September 2011, Dr. Fine performed a psychiatric evaluation. (R. at 237–40). Plaintiff reported insomnia, chronic mood changes, and suicidal ideations. (*Id.*

---

[8] <https://en.wikipedia.org/wiki/Generalized_anxiety_disorder>

at 237–38). During depressive periods, he has low energy and sleeps most of the time; the manic phases are characterized by lack of sleep for a day or two. (*Id.*). Dr. Fine found Plaintiff credible and concluded that Plaintiff "presents with a clear history of alternating suicidal depressions and manic states," which are not controlled by medications. (*Id.* at 237, 240). He diagnosed bipolar I disorder, last episode depressed. (*Id.* at 240).

In February 2012, Dr. Gil completed a psychiatric evaluation. She observed that Plaintiff had mild psychomotor retardation, poor hygiene and a disheveled appearance (R. at 280–84), symptoms which are consistent with bipolar and anxiety disorders, *see* Danielle Snyderman, M.D. & Barry W. Rovner, M.D., *Mental Status Examination in Primary Care: A Review* (Am. Fam. Physician Oct. 2009). On examination, Plaintiff's affect was sad and restricted and his mood moderately depressed. (R. at 282). Dr. Gil concluded that Plaintiff's history, symptoms, and signs are indicative of a bipolar disorder recurrent without psychotic features, depressed, moderate to severe. (*Id.* at 283–84). "Episodes that are severe without psychotic features are characterized by the presence of most of the criteria symptoms and clear-cut, observable disability (e.g., inability to work or care for children)." *DSM-IV* at 412 (emphasis omitted). Dr. Gil opined that Plaintiff would be unable to manage funds himself if he was awarded benefits. (R. at 284).

The ALJ does not describe how Drs. Fine's and Gil's assessments are inconsistent with Dr. Noorani's opinion. (R. at 75). Earlier in his decision, the ALJ noted that both Dr. Fine's and Dr. Gil's mental status examinations were largely unre-

markable. (*Id.* at 71). But "[t]here appear to be no laboratory features that are diagnostic of Bipolar I Disorder." *DSM-IV* at 384. Thus, bipolar disorder and anxiety disorder diagnoses rely primarily on a patient's description of his symptoms and are largely independent of a mental status examination. *See* MayoClinic.org. Further, it is difficult to make an informed functional assessment of a mental illness after a single visit. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."); *Phillips v. Astrue*, 413 Fed. Appx. 878, 886 (7th Cir. 2010) ("The ALJ's assessment of the medical record also demonstrates a misunderstanding about the nature of mental illness. . . . Many mental illnesses are characterized by 'good days and bad days,' rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("More importantly, symptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression."); s*ee also Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) (collecting cases).

Finally, contrary to the ALJ's assertion, Dr. Noorani did consider Plaintiff's admitted alcohol use. Plaintiff acknowledged to Dr. Noorani that he had an alcohol abuse problem in the past. (R. at 310). He admitted to drinking five or six beers on occasion. (*Id.* at 310–11). In June 2012, Dr. Noorani admonished him to stop drink-

ing. (*Id.* at 310). In subsequent visits, Plaintiff denied drinking, and Dr. Noorani observed no symptoms to the contrary. (*Id.* at 307–09; *see id.* at 318 ("I counseled him about stopping and he appears to have attempted to do so.")). Thus, when Dr. Noorani issued his opinion in November 2012, he could accurately conclude that Plaintiff was not currently using drugs or alcohol. (*Id.* at 317).

With the benefit of monthly visits, Dr. Noorani concluded that Plaintiff's current, occasional use of alcohol did not rise to the level of a substance abuse disorder. (R. at 317). "Alcohol use disorder (which includes a level that's sometimes called alcoholism) is a pattern of alcohol use that involves problems controlling your drinking, being preoccupied with alcohol, continuing to use alcohol even when it causes problems, having to drink more to get the same effect, or having withdrawal symptoms when you rapidly decrease or stop drinking." MayoClinic.org. Here, there is no evidence that Plaintiff's alcohol use rose to this level. Indeed, there is no indication that Plaintiff was inebriated during a treatment visit or missed an appointment because he had been drinking.

Further, by diagnosing Plaintiff with bipolar disorder, last episode depressed, Drs. Noorani, Fine, and Gill were necessarily eliminating alcohol abuse as a contributing cause of Plaintiff's symptoms. As noted above, bipolar disorder includes major depressive episodes. *DSM-IV* at 391. And the symptoms for major depressive disorders *cannot* be "due to the direct physiological effects of a substance (e.g., a drug of abuse, a medication) or a general medical condition." *Id.* at 356.

On remand, the ALJ shall reevaluate the weight to be afforded Dr. Noorani's opinion. If the ALJ finds "good reasons" for not giving the opinion controlling weight, *see Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010), the ALJ shall explicitly "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion," *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009), in determining what weight to give the opinion.

### 2. *Durojaiye's Opinion*

In November 2011 and May 2012, Durojaiye, Plaintiff's therapist, completed two separate mental RFC assessments. (R. at 259–60, 305–06). They each concluded that Plaintiff was substantially impaired in his ability to perform many work-related functions. (*Id.*). The ALJ gave the opinions "no weight" because

> they are conclusory, with no treating notes to support said opinions, and inconsistent with [Plaintiff's] abilities as suggested from the consultative exams and from Dr. Noorani's treatment notes. In addition, the undersigned notes that Ms. Durojaiye is not an acceptable medical source and her opinions do not even consider [Plaintiff's] alcohol use and contrary to the record, in fact, reflect that [Plaintiff] is not currently using drugs or alcohol.

(*Id.* at 75) (citations omitted).

Under the circumstances, the ALJ's decision to give no weight to Durojaiye's opinion is legally insufficient and not supported by substantial evidence. First, the fact that Durojaiye is not "an acceptable medical source" is not a valid reason for giving her opinion no weight. While the opinions of MHP's "cannot establish the existence of a medically determinable impairment," information from MHP's "may

provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Social Security Ruling (SSR)[9] 06-03, at *2. SSR 06-03 further explains:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.* at *3. Further, Durojaiye is part of a team of doctors and other medical sources at Wright Health Center who treated Plaintiff, including Dr. Noorani. (R. at 259–79, 305–18). Durojaiye's assessment is consistent with Dr. Noorani's treatment notes and diagnoses, as described above. Thus, while Durojaiye's opinion cannot be given controlling weight, it cannot be discounted because she is an MHP.

Second, Social Security does not require a therapist's treatment notes. Instead, a therapist can choose to "to prepare a special report detailing the critical current and longitudinal aspects of [the] patient's treatment and their functional status." Social Security, *Fact Sheet For Mental Health Care Professionals: Supporting Individuals'*

---

[9] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

*Social Security Disability Claims*.[10] Here, Durojaiye submitted a medical summary report to support her opinion. (R. at 261–63).

Finally, as discussed above, there is no evidence to suggest that Plaintiff was suffering from an alcohol abuse disorder during the time period in which he was treating with Durojaiye. Thus, the ALJ's decision to reject Durojaiye's opinion because she failed to consider Plaintiff's alcohol use is not supported by substantial evidence. On remand, the ALJ shall evaluate Durojaiye's opinion by using the factors set forth in 20 C.F.R. §§ 404.1527, 416.927 and SSR 06-3p.

## B. The ALJ's Conclusion That Alcohol Dependence Was a Material Factor in Plaintiff's Disability Is Not Supported by Substantial Evidence

The ALJ determined that Plaintiff's affective disorder, anxiety, and alcohol dependence are severe impairments. (R. at 62). The ALJ also concluded that Plaintiff's alcohol dependence materially affected his mental impairments. (*Id.* at 62–73). After careful review, the Court finds that the ALJ's determination is not supported by substantial evidence.

The key factor to determining whether alcoholism is a contributing factor material to a disability determination "is whether [Social Security] would still find a claimant disabled if she or she stopped using drugs or alcohol." SSR 13-2p, at *4.[11] However, the ALJ cannot make a materiality determination unless there is "medical evidence from an acceptable medical source establishing that a claimant has a

---

[10] *See* <https://ssa.gov/disability/professionals/mentalhealthproffacts.htm>

[11] SSR 13-2p was effective March 22, 2013, which was after the ALJ's decision but before the Appeals Council declined review. Both the Commissioner and Plaintiff favorably cited to SSR 13-2p in their briefs.

Substance Abuse Disorder." *Id.* Further, self-reported alcohol use does not by itself establish a substance abuse disorder. *Id.* at *10. Instead, there must be "objective medical evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical source that supports a finding that a claimant has [a substance abuse disorder]." *Id.*

Here, no acceptable medical source made an independent determination that Plaintiff has a *current* substance abuse disorder. Drs. Fine and Gil largely opined that Plaintiff has a *history* of alcohol abuse. (R. at 240, 283–84). And, as discussed above, there is no evidence that Plaintiff's alcohol use rose to the level of a substance abuse disorder, as described in the DSM. *See* SSR 13-2p, at *3 (Social Security defines substance abuse disorder as defined in the latest edition of the DSM). Moreover, Drs. Fine and Gil based their opinions of alcohol use entirely on Plaintiff's self-report of past abuse. (*Id.* at 237–38, 281). "Evidence that shows only that the claimant uses drugs or alcohol does not in itself establish the existence of a medically determinable Substance Use Disorder." SSR 13-2p, at *10.

Even assuming that Plaintiff has a substance abuse disorder, as described in the DSM, the ALJ does not cite to medical evidence establishing that Plaintiff would not be disabled in the absence of his alcohol use. SSR 13-2p, at *9. Instead, the ALJ makes his own findings (R. at 73), which are not permitted, SSR 13-2p, at *9. "An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870; *see Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996) ("As this Court has counseled on

many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Further, even if Plaintiff's mental illness was aggravated by alcohol abuse, it does not prove that Plaintiff's bipolar disorder is not disabling. *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) ("But the fact that substance abuse aggravated her mental illness does not prove that the mental illness itself is not disabling."). Indeed, "bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms." *Id.* There is simply not enough support in the record for the ALJ to find that Plaintiff suffered from a substance abuse disorder.

## C. Summary

In sum, the ALJ has failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, after reevaluating Dr. Noorani's and MHP Durojaiye's opinions, the ALJ shall then reevaluate Plaintiff's mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to

the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [12] is **GRANTED**, and Defendant's Motion for Summary Judgment [23] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: December 17, 2015

_____
MARY M. ROWLAND
United States Magistrate Judge